DAVID D. LEVY AND MARJEAN M. LEVY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levy v. Commissioner
Docket No. 22261-90
United States Tax Court
T.C. Memo 1992-471; 1992 Tax Ct. Memo LEXIS 496; 64 T.C.M. (CCH) 534; August 19, 1992, Filed *496 Decision will be entered for respondent. For Petitioners: Robert V. Townes III. For Respondent: Robert W. West. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1985 and 1986 in the amounts of $ 27,817 and $ 889, respectively. The issue for decision is whether the sale made by petitioner to Mr. Ernest Johns was the sale of a capital asset or was the sale of a computer program, an asset which is excludable from the definition of capital asset under section 1221(3). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Pinson, Alabama, at the time the petition in this case was filed. They filed a joint Federal income tax return with the Director, Internal *497 Revenue Service Center, Atlanta, Georgia, for each of the years 1985 and 1986. David D. Levy (petitioner) is a computer programmer. From October 1978 to January 1984, petitioner was employed by Fort Howard Paper Co. of Green Bay, Wisconsin. In 1982, Larry Lawler, another computer programmer, joined the company. Petitioner and Mr. Lawler developed a computer software program to monitor and improve the performance of an International Business Machines (IBM) teleprocessing software system known as the Customer Information Control System (CICS). The software could be utilized on any IBM or IBM-compatible mainframe computer capable of executing the CICS system. Petitioner and Mr. Lawler had an agreement with Fort Howard Paper Co. that they would retain their property rights over the computer software program. In 1983, on a visit to Fort Howard Paper Co., Mr. Ernest Johns saw the product developed by petitioner and Mr. Lawler in operation at Fort Howard Paper Co., and expressed interest in purchasing the computer software program. The program was being operated at Fort Howard Paper Co. on a source code that contained two programs. On January 27, 1984, an agreement of sale was executed *498 whereby petitioner and Mr. Lawler transferred to Mr. Johns "all rights and interest in and to the Systems, including without limitation, all source and object code and manuals and all other related documentation and materials therefor and all enhancements now existing or hereafter made thereto." The agreement called for petitioner and Mr. Lawler to each receive as consideration $ 1,500 per month for 6 months plus one-third of the net proceeds after expenses incurred by Mr. Johns from any subsequent sale or license of the system. On January 25, 1985, petitioner and Mr. Johns entered into an agreement whereby petitioner granted to Mr. Johns "all rights, title to, and interest in and to the SYSTEM, including without limitation, all source and object code and manuals and all other related documentation and materials therefor and all enhancements now existing or hereafter made thereto." On April 19, 1985, Mr. Johns, through his wholly owned subsidiary corporation, Quantum International Corp., sold the computer software program to Boole & Babbage, Inc., for $ 850,000. Prior to this sale, Mr. Johns had licensed the system to several companies. Petitioners on their Federal income tax returns *499 for the years here in issue reported the gain from the sale to Mr. Johns as long-term capital gain. Respondent in the notice of deficiency determined that the gain from the sale was ordinary income and increased petitioners' income as reported accordingly. OPINION Section 1221 defines capital assets as all assets held by the taxpayer except those specifically excepted by statute. However, it is well established that the definition of a capital asset is narrowly construed. United States v. Midland-Ross Corp., 381 U.S. 54, 56 (1965). The parties in this case recognize that the asset sold by petitioner qualifies as a capital asset unless it falls within the exception for a copyright or similar property. Sec. 1221(3). [2] Petitioner takes the position that the asset he sold to Mr. Johns was "an idea" on which a copyright could not be obtained. Respondent contends that petitioner sold Mr. Johns a computer program on which a copyright could have been obtained. *500 The parties agree that the Federal copyright law is applicable to computer programs. Petitioner did not seek copyright protection for his product. However, section 1.1221-1(c)(1), Income Tax Regs., expressly includes within the definition of property similar to a copyright, property eligible for copyright protection. The fact that petitioner and Mr. Lawler developed the property together causes the interest of each party to be excluded from the capital asset category if the asset otherwise comes within the definition of similar property under section 1221(3). See Hill v. Commissioner, 47 T.C. 613 (1967); S. Rept. 2375, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 483, 543. We must therefore determine whether the asset held by petitioner was eligible for copyright protection as a computer program under the copyright law. A computer program has been defined since the copyright statute was amended in 1980 in 17 U.S.C. sec. 101, as a "set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." In Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222 (3d Cir. 1986), *501 the court elaborated on the definition by holding that a computer program includes not only the literal elements (including object codes and source codes) but also the organization, structure, and sequence. In the present case petitioner, in conjunction with Larry Lawler, had an idea to monitor and improve the performance of an existing computer network at the Fort Howard Paper Co. known as the CICS. The record shows that the expression of that idea was put in the form of a computer program installed at Fort Howard Paper Co. after several months of development. Petitioner testified that at no time did Fort Howard Paper Co. have any property rights in the computer program developed for the CICS. The record shows that petitioner owned an asset that included a source code which fit the definition of a program under the copyright law. The program was being used at Fort Howard Paper Co. As a computer program the asset also fit the enumerated exception to capital asset contained in section 1221(3) for copyright or similar property. Petitioner's primary argument is that he did not sell his computer program (i.e., the expression) to Mr. Ernest Johns but rather simply sold the idea *502 underlying the program. The facts in this record do not support petitioner's contention. The agreement of sale signed on January 27, 1984, transferred to Mr. Ernest Johns all rights in and to the system including "without limitation, all source and object code and manuals and all other related documentation and materials therefor and all enhancements now existing or hereafter made." Clearly the program codes were part of the sale. Petitioner testified that prior to the sale Mr. Johns had seen the computer program in operation at Fort Howard Paper Co. This testimony further supports the conclusion that more than an idea was sold by petitioner to Mr. Johns. We hold that petitioner sold an expression of his idea embodied in the computer program in use at Fort Howard Paper Co. to Mr. Johns. Accordingly, we hold that petitioner sold an asset eligible for copyright protection and, hence, excluded from the definition of a capital asset under section 1221(3). Petitioner's contention that he did not transfer the computer program in use at Fort Howard Paper Co. to Mr. Johns is based on his claim that he did not physically deliver the codes in use at Fort Howard Paper Co. to Mr. Johns. *503 Petitioner says that he worked further and enhanced the codes before they were physically delivered to Mr. Johns. Under the sales contract the codes were included in the property sold to Mr. Johns. Therefore, Mr. Johns owned the codes whether or not they were physically delivered to him. The fact that petitioner transferred the structure, organization, and sequence of the computer program to Mr. Johns does not cause the asset to fall outside the copyright protection and therefore outside the enumerated exception from the definition of a capital asset. Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., supra.
Petitioner admits that by the time he and Mr. Johns entered into the contract executed on January 25, 1985, the asset transferred was a computer program but contends that this contract was not a sale of the computer program since Mr. Johns already owned the computer program. The record is not clear as to the reason for the January 25, 1985, contract. However, this record is clear that all rights to the computer program as it then existed including the codes and any enhancement of the program was sold to Mr. Johns on January 27, 1984. *504 Petitioner contends that he did not seek a copyright on the computer program used at Fort Howard Paper Co. because of his desire to keep the source codes a secret. However, as we have heretofore pointed out, the literal language of section 1.1221-1(c)(1), Income Tax Regs., provides that exception to the definition of a capital asset set forth in section 1221(3) includes those assets eligible for copyright protection whether or not such protection is sought. Using eligibility as the standard, it is irrelevant whether the asset was in fact protected by copyright. Petitioner has the burden of affirmatively proving that respondent's determination of ordinary income treatment for the sale of the computer program is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner has failed to meet his burden of proof. Based on this record, we conclude that petitioner has failed to establish that he is entitled to capital gains treatment on the *505 gain from the sale of the asset he sold to Mr. Johns. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Sec. 1221 provides in part: SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include-- * * * (3) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by-- (A) a taxpayer whose personal efforts created such property, * * *↩